## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY

Eastern District of Kentucky
**F I L E D**
APR 2 5 2019
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

| | | |
|---|---|---|
| JULIA WARE AND RALPH, EDWARDS, individually and on behalf of all others similarly situated, | ) ) ) | Civil Action No. |
| | ) | Hon. |
| Plaintiff, | ) ) | |
| v. | ) ) | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| CKF ENTERPRISES, INC., d/b/a EXECUTRAIN OF KENTUCKY d/b/a OPTIM SUPPORT, INC., and CRINDA FRANCKE | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

There is no other pending or resolved civil action arising out
of the transaction or occurrence alleged in the complaint.

### CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs Julia Ware and Ralph Edwards ("Plaintiffs"), through their undersigned counsel, individually and on behalf of all others similarly situated, file this Class and Collective Action Complaint against Defendants CKF Enterprises, Inc., d/b/a ExecuTrain of Kentucky ("ExecuTrain") and Crinda Francke ("Ms. Francke") (collectively "Defendants"). The following allegations are based on personal knowledge as to Plaintiffs' own conduct and on information and belief as to the acts of others.

## PRELIMINARY STATEMENT

1.      This is an action brought pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA") and the Kentucky Wage and Hour Act, K.R.S. § 337.010 *et seq.* ("KWHA"), seeking payment of back wages, including unpaid overtime wages in violation of state law. Plaintiffs, individually and on behalf of the FLSA Collective and the Kentucky Class, defined below, also seek their liquidated damages for the failure to pay wages, attorneys' fees and costs, and all other relief the Court deems proper.

2.      Plaintiffs alleges that they and other similarly situated Consultants were knowingly and improperly classified as independent contractors or exempt employees, and, as a result, did not receive overtime pay for hours worked in excess of forty (40) in a workweek.

## JURISDICTION AND VENUE

3.      Jurisdiction over Plaintiffs' FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391, because Plaintiff Ware was employed by Defendants in Hazard, Kentucky, in this judicial district, and therefore a substantial part of the events giving rise to Plaintiffs' claims took place in this district, and Defendant ExecuTrain maintains its principle place of business in Lexington, Kentucky, in this judicial district.

## PARTIES

5.     Plaintiff Julia Ware is an individual residing in Marietta, Georgia.

6.     Plaintiff Ware worked for ExecuTrain as a Consultant providing support and training to ExecuTrain's clients in using a new recordkeeping system at Covenant Health in Knoxville, Tennessee between approximately September 18, 2018 and October 2, 2018 and at Appalachian Regional Health ("ARH") in Hazard, Kentucky from approximately February 1, 2019 to February 15, 2019.

7.     Pursuant to 29 U.S.C. § 216(b), Plaintiff Ware has consented in writing to participate in this action. *See* Ex. A.

8.     Plaintiff Edwards is an individual residing in Mobile, Alabama.

9.     Plaintiff Edwards worked for ExecuTrain as a Consultant providing support and training to ExecuTrain's clients in using a new recordkeeping system at Covenant Health in Knoxville, Tennessee between approximately May 22, 2018 and October 1, 2018.

10.     Pursuant to 29 U.S.C. § 216(b), Plaintiff Edwards has consented in writing to participate in this action. *See* Ex. B.

11.     Defendant ExecuTrain is a Kentucky corporation that provides corporate training and development solutions to companies. Among other services, ExecuTrain provides information technology educational services for its clients in the healthcare industry. ExecuTrain maintains its principal office in Lexington,

3

Kentucky.

12.     Defendant Crinda Francke is the President and CEO of Defendant ExecuTrain. Ms. Francke directs the operations of ExecuTrain's business and is directly involved in ExecuTrain's payroll and employee classification decisions.

13.     Defendants recruit and employ Consultants to work on healthcare projects at their clients' hospitals and medical centers.

14.     Defendants employ individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

15.     ExecuTrain's annual gross volume of sales made or business done exceeds $500,000.

## COLLECTIVE AND CLASS DEFINITIONS

16.     Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of themselves and the following collective of potential FLSA opt-in litigants:

> All individuals who worked for Defendants providing training and support to Defendants' clients in using electronic recordkeeping systems in the United States from the date three years prior to the date this Complaint was filed and who did not receive overtime compensation when they worked more than forty (40) hours per week (the "FLSA Collective" or "Collective").

17.     Plaintiff Ware brings Count II of this lawsuit as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and the following class:

> All individuals who worked for Defendants providing training and support to Defendants' clients in using electronic recordkeeping systems in the State of Kentucky from the date five years prior to the date this Complaint was filed and who did not receive overtime compensation when they worked more than forty (40) hours per week (the "Kentucky Class").

18.     The FLSA Collective and the Kentucky Class are together referred to as the "Classes" or "Consultants."

19.     Plaintiffs reserve the right to redefine the Classes prior to notice and certification, and thereafter, as necessary.

## FACTS

20.     Defendant ExecuTrain is a professional services company that provides corporate training and development solutions to companies. Among other services, ExecuTrain provides training and support to medical facilities in connection with the implementation of new electronic recordkeeping systems.

21.     Defendant Crinda Francke is the President and CEO of Defendant ExecuTrain. Ms. Francke directs ExecuTrain's operations and is directly involved in ExecuTrain's payroll and compensation decisions.

22.     Defendants determine the schedules for Plaintiffs and other Consultants, approve any requests for expense reimbursements or for time off, and approve the hours worked by Consultants.

23.    Defendants provide Plaintiffs and other Consultants with a contract setting out the terms of their work.

24.    Defendants provide Plaintiffs and other Consultants with instructions regarding the work to be performed on their project assignments, and the process to be followed at the conclusion of the project assignment, as well as daily updates to the Consultants' schedules.

25.    Defendants communicate with Plaintiffs and other Consultants regularly during the course of a project assignment.

26.    Defendants' financial results are significantly driven by the number of Consultants performing training and support services for Defendants' customers, and the fees that Defendants charge the customers for these services.

27.    Between approximately September 18, 2018 and October 2, 2018, Plaintiff Ware was assigned by ExecuTrain to provide educational and support services to healthcare staff at Covenant Health in Knoxville, Tennessee.

28.    At Covenant Health, Plaintiff Ware worked alongside and was interchangeable with 150 or more other workers doing the same work.

29.    During her placement through ExecuTrain at Covenant Health, Plaintiff Ware worked over 40 hours per week.

30.    During her placement through ExecuTrain at Covenant Health, Plaintiff Ware was classified as an independent contractor and paid on a 1099.

31.    When ExecuTrain paid Plaintiff Ware for her time at Covenant Health, her pay did not include the overtime premium.

32.    Between approximately February 1, 2019 and February 15, 2019, Plaintiff Ware was assigned by ExecuTrain to provide educational and support services to healthcare staff at Appalachian Regional Health ("ARH") in Hazard, Kentucky.

33.    At ARH, Plaintiff Ware worked alongside and was interchangeable with 200 or more other workers doing the same work.

34.    During her placement through ExecuTrain at ARH, Plaintiff Ware worked over 40 hours per week.

35.    During her placement through ExecuTrain at ARH, Plaintiff Ware was classified as an independent contractor and paid on a 1099.

36.    When ExecuTrain paid Plaintiff Ware for time at ARH, her pay did not include the overtime premium.

37.    Between approximately May 22, 2018 and October 1, 2018, Plaintiff Edwards was assigned by ExecuTrain to provide educational and support services to healthcare staff at Covenant Health in Knoxville, Tennessee.

38.    At Covenant Health, Plaintiff Edwards worked alongside and was interchangeable with 150 or more other workers doing the same work.

39.     During his placement through ExecuTrain at Covenant Health, Plaintiff Edwards worked over 40 hours per week.

40.     During his placement through ExecuTrain at Covenant Health, Plaintiff Edwards was classified as an independent contractor and paid on a 1099.

41.     When ExecuTrain paid Plaintiff Edwards for his time at Covenant Health, his pay did not include the overtime premium.

42.     While Plaintiffs were employed by ExecuTrain, they did not have paid meal or rest breaks.

43.     Defendants provided Consultants, including Plaintiffs, with a template "invoice" that they required Consultants to use to report their hours worked.

- **Plaintiffs and Members of the Classes are Employees as a Matter of Economic Reality**

44.     Work performed by Plaintiffs and Collective and Class Members is an integral part of Defendants' business. Defendants are in the business of providing information technology educational services to the healthcare industry. Plaintiffs and Collective and Class Members provide support and training to Defendants' clients in connection with the implementation of new electronic recordkeeping systems.

45.     Plaintiffs' and Collective and Class Members' duties do not involve managerial work. They follow the training provided to them by Defendants in performing their work, which is basic training and support in using electronic recordkeeping systems.

46.    Plaintiffs and Collective and Class Members do not make any significant relative investments in relation to their work with Defendants. Defendants provide the training and equipment required to perform the functions of their work.

47.    Plaintiffs and the Collective and Class Members have little or no opportunity to experience a profit or loss related to their employment. Defendants pay Plaintiffs and the Collective and Class Members a fixed hourly rate. Plaintiffs and the Collective and Class Members do not share in Defendants' monetary success; their income from their work is limited to their hourly rate.

48.    Plaintiffs' and Collective and Class Members' work does not require special skills, judgment, or initiative. Defendants provide training to Plaintiffs and Collective and Class Members, which they use to provide training and support to Defendants' clients.

49.    Plaintiffs and Collective and Class Members are economically dependent on Defendants. Plaintiffs and Collective and Class Members are entirely dependent upon Defendants for their business, as they are not permitted to perform services for any other company during their time working for Defendants.

50.    Plaintiffs and Collective and Class Members are not customarily engaged in an independently established trade, occupation, profession or business.

51.   Collective and Class Members typically enter into successive projects for Defendants.

52.   Plaintiffs and Collective and Class Members have little or no authority to refuse or negotiate Defendants' rules and policies; they must comply or risk discipline and/or termination.

53.   Defendants instruct Plaintiffs and Collective and Class Members concerning how to do their work and dictate the details of the performance of their jobs. For example:

    a. Defendants, not Plaintiffs or Collective or Class Members, conduct all of the billing and invoicing to Defendants' clients for the work. Defendants bill the third-party customers directly;

    b. Plaintiffs and Collective and Class Members have no control over what prices to charge, or the scheduling of shifts. All negotiations over the cost of the work are done directly between Defendants and the third-party client;

    c. Defendants require Plaintiffs and Collective and Class Members to work the entire project from inception to conclusion;

    d. Defendants provide all training needed for Plaintiffs and Collective and Class Members to perform their work; and

    e. Defendants require Plaintiffs and Collective and Class Members to

perform in accordance with Defendants' policies, manuals, standard operating procedures and the third-party client's requirements.

54.    Plaintiffs and Collective and Class Members have to request Defendants' approval for time off. Defendants have the discretion to grant or deny such requests.

- **Plaintiffs and Members of the Classes are not Exempt as "Computer Employees" under the FLSA**

55.    Plaintiffs and other Consultants provide support and training to hospital staff in connection with electronic recordkeeping systems. Plaintiffs have no specialized training or certification in computer programming, software documentation and analysis, or testing of computer systems or programs. Plaintiffs and other Consultants were not working as, nor were they similarly skilled as, computer systems analysts, computer programmers, or software engineers, as defined in 29 C.F.R. § 541.400(a).

56.    Plaintiffs' and other Consultants' primary duties consisted of training and aiding healthcare staff with using the new recordkeeping software. This type of user support is also known as "at the elbow." Plaintiffs' and other Consultants' primary duties did not include the higher skills of the "application of systems analysis techniques and procedures," pursuant to 29 C.F.R. § 541.400(b)(1). Plaintiffs and other Consultants did not analyze, consult or determine hardware,

software programs or any system functional specifications for Defendants' clients. *See id.*

57.    Plaintiffs and other Consultants did not consult with Defendants' customers to determine or recommend hardware specifications. Plaintiffs and other Consultants did not design, develop, document, analyze, create, test or modify a computer system or program, as defined in 29 C.F.R. § 541.400(b)(2).

58.    While Plaintiffs' and the Consultants' work involved the use of computers, they were not "primarily engaged in computer systems analysis and programming." U.S. Dept. of Labor, Wage & Hour Div., Fact Sheet #17E: Exemption for Employees in Computer-Related Occupations under the Fair Labor Standards Act (FLSA). Plaintiffs and other Consultants provided support and training in using electronic recordkeeping systems to Defendants' clients.

- **Plaintiffs and other Consultants Routinely Worked in Excess of 40 Hours a Week**

59.    Plaintiffs and other Consultants routinely worked in excess of forty (40) hours per workweek, but were not paid overtime compensation as required by the FLSA and the KWHA.

60.    Plaintiffs and other Consultants were paid only a straight hourly rate.

61.    Plaintiffs and other Consultants were not provided with overtime compensation at the rate of one and one-half (1 ½) times their regular pay rate, when

they worked more than forty (40) hours per week, as required by the FLSA and the KWHA.

62.    Plaintiffs and other Consultants were not paid on a salary basis.

- **Defendants Willfully Violated the FLSA and the KWHA**

63.    Defendants had no reasonable basis to believe that Plaintiffs and other Consultants were exempt from the requirements of the FLSA or the KWHA. Rather, Defendants either knew or acted with reckless disregard of clearly applicable FLSA and KWHA provisions in classifying Plaintiffs and other Consultants as exempt from the overtime provisions of the FLSA and the KWHA. Such willfulness is demonstrated by, or may be reasonably inferred from, Defendants' actions and/or failures to act, including the following:

    a.  At all times relevant hereto, Defendants maintained payroll records that reflected the fact that Plaintiffs and other Consultants did, in fact, regularly work in excess of 40 hours per week, and thus, Defendants had actual knowledge that Plaintiffs and other Consultants worked overtime;

    b.  At all times relevant hereto, Defendants knew that they did not pay Plaintiffs and other Consultants one and one-half (1 ½) times their regular pay rate for hours worked in excess of forty (40) hours per week;

c. As evidenced by their own job offer letters and training materials for Consultants, at all times relevant hereto, Defendants were aware of the nature of the work performed by their Consultants, and, in particular, that such individuals worked exclusively with healthcare workers employed by Defendants' clients, providing basic training and support;

d. As evidenced by their own job offer letters and training materials for Consultants, Defendants knew and understood that they were subject to the wage requirements of the FLSA as "employers" under 29 U.S.C. § 203(d) and the KWHA as "employers" under K.R.S. § 337.010(1)(d).

e. At all times relevant hereto, Defendants were aware that their Consultants did not engage in: (i) computer systems analysis, computer programming, or software engineering, as defined in 29 C.F.R. § 541.400(a); (ii) the application of systems analysis techniques and procedures, as defined in 29 C.F.R. § 541.400(b)(1); or (iii) the design, development, analysis, creation, testing or modification of a computer system or program, as defined in 29 C.F.R. § 541.400(b)(2);

f. Defendants lacked any reasonable or good faith basis to believe that their Consultants fell within any exemption from the overtime requirements of the FLSA or the KWHA. Rather, Defendants deliberately misclassified their Consultants as exempt in order to avoid

paying them overtime compensation to which they were entitled;

g.  At all times relevant hereto, Defendants were aware that they would (and, in fact did) benefit financially by failing to pay Plaintiffs and other Consultants one and one-half (1 ½) times their regular pay rate for hours worked in excess of forty (40) hours per week; and

h.  Thus, Defendants had (and have) a strong financial motive to violate the requirements of the FLSA and the KWHA by misclassifying their Consultants as exempt from the overtime requirements of the FLSA and the KWHA.

64.    Based upon the foregoing, Defendants were cognizant that, or recklessly disregarded whether, their conduct violated the FLSA and the KWHA.

65.    For the same reasons, Defendants acted without good faith in violating the FLSA and the KWHA.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

66.    Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective defined above.

67.    Plaintiffs desire to pursue their FLSA claims on behalf of all individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

68.    Plaintiffs and the FLSA Collective Members are "similarly situated" as that term is used in 29 U.S.C. § 216(b) because, *inter alia*, all such individuals have

15

been subject to Defendants' common business and compensation practices as described herein, and, as a result of such practices, have not been paid the legally mandated overtime compensation for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common misclassification, compensation and payroll practices.

69.     The FLSA requires non-exempt hourly employees to be compensated at a rate of one and one-half (1 ½) times the regular hourly rate for all hours worked over 40 in a week.

70.     Defendants misclassified Plaintiffs and FLSA Collective Members as exempt from the overtime requirements of the FLSA and failed to provide them overtime compensation for hours worked in excess of 40 a week.

71.     The similarly situated employees are known to Defendants, are readily identifiable, and can easily be located through Defendants' business and human resources records.

72.     Defendants employ many FLSA Collective Members throughout the United States. These similarly situated employees may be readily notified of this action through electronic mail, U.S. Mail, and/or other means, and allowed to opt in to this action pursuant to 29 U.S.C. § 216(b), for the purpose of collectively

adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest) and attorneys' fees and costs under the FLSA.

## KENTUCKY CLASS ALLEGATIONS

73.     Plaintiff Ware brings Count II of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the Kentucky Class defined above.

74.     The members of the Kentucky Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than two hundred (200) members of the Kentucky Class.

75.     Plaintiff Ware will fairly and adequately represent and protect the interests of the Kentucky Class because there is no conflict between the claims of Plaintiff Ware and those of the Kentucky Class, and Plaintiff Ware's claims are typical of the claims of the Kentucky Class. Plaintiff Ware's counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

76.     There are questions of law and fact common to the proposed Kentucky Class, which predominate over any questions affecting only individual Class Members, including, without limitation, whether Defendants have violated and continue to violate Kentucky law through their policy or practice of not paying their Consultants overtime compensation.

77.     Plaintiff Ware's claims are typical of the claims of the Kentucky Class

Members in the following ways, without limitation: (a) Plaintiff Ware is a member of the Kentucky Class; (b) Plaintiff Ware's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Kentucky Class; (c) Plaintiff Ware's claims are based on the same legal and remedial theories as those of the Kentucky Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff Ware and the Kentucky Class Members; and (e) the injuries suffered by Plaintiff Ware are similar to the injuries suffered by the Kentucky Class Members.

78.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Kentucky Class predominate over any questions affecting only individual Class Members.

79.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Kentucky Class Members are readily identifiable from Defendants' own records. Prosecution of separate actions by

individual members of the Kentucky Class would create the risk of inconsistent or varying adjudications with respect to individual Kentucky Class Members that would establish incompatible standards of conduct for Defendants.

80.    A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the Kentucky Class Members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

81.    Without a class action, Defendants will retain the benefit of their wrongdoing, which will result in further damages to Plaintiff Ware and the Kentucky Class. Plaintiff Ware envisions no difficulty in the management of this action as a class action.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
### (On Behalf of Plaintiffs and the FLSA Collective)

82.    All previous paragraphs are incorporated as though fully set forth herein.

83.    The FLSA defines "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee..." 29 U.S.C. § 203(d).

84.    Defendants are subject to the wage requirements of the FLSA because Defendants are "employers" under 29 U.S.C. § 203(d).

85. At all relevant times, Defendants have been "employers" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

86. During all relevant times, Plaintiffs and the FLSA Collective Members have been covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

87. Plaintiffs and the FLSA Collective are not exempt from the requirements of the FLSA.

88. Plaintiffs and the FLSA Collective Members are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1).

89. Defendants, pursuant to their policies and practices, failed and refused to pay overtime compensation to Plaintiffs and the FLSA Collective members for their overtime hours worked by misclassifying Plaintiffs and the FLSA Collective as exempt from the overtime requirements of the FLSA.

90. Defendants knowingly failed to compensate Plaintiffs and the FLSA Collective Members at a rate of one and one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1).

91. In violating the FLSA, Defendants acted willfully and with reckless

disregard of clearly applicable FLSA provisions.

92.     In violating the FLSA, on information and belief, Defendants did not have any good faith basis to rely on any legal opinion or advice to the contrary.

## COUNT II
## VIOLATION OF K.R.S. §§ 337.285 and 337.050
## (On Behalf of Plaintiff Ware and the Kentucky Class)

93.     All previous paragraphs are incorporated as though fully set forth herein.

94.     Plaintiff Ware is a member of a class that meets the requirements for certification and maintenance of a class action pursuant to Rule 23.

95.     The Kentucky Wage and Hour Act ("KWHA") requires that employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half times the regular rate at which they are employed. K.R.S. § 337.285(1).

96.     The KWHA also requires that employees who work seven days in one workweek be compensated for work done on the seventh day at a rate of one and one-half times the regular rate at which they are employed. K.R.S. § 337.050(1).

97.     During all relevant times, Defendants were covered employers required to comply with the KWHA. K.R.S. § 337.010(1)(d).

98.     During all relevant times, Plaintiff Ware and the putative Kentucky Class were covered employees entitled to the above-described protections. K.R.S. §

337.010(1)(e).

99.    Plaintiff Ware and the putative Kentucky Class Members are not exempt from receiving the KWHA's overtime benefits because they do not fall within any of the exemptions set forth therein. K.R.S. § 337.285(2).

100.    Upon information and belief, Defendants willfully failed to pay Plaintiff Ware and the putative Kentucky Class overtimes wages at a rate of one and one-half times their regular rate of pay to which they are entitled under K.R.S. § 337.285(1).

101.    By virtue of Defendants' failure to pay Plaintiff Ware and the putative Kentucky Class Members the legally-required overtime wages for all hours worked in excess of 40 hours per week, Defendants willfully violated K.R.S. § 337.285(1).

102.    Pursuant to K.R.S. § 337.385 employers, such as Defendants, who intentionally fail to pay an employee wages in conformance with the KWHA shall be liable to the employee for the wages or expenses that were intentionally not paid, liquidated damages, court costs, and attorneys' fees incurred in recovering the unpaid wages.

103.    In violating the KWHA, on information and belief, Defendants did not have any good faith basis to rely on any legal opinion or advice to the contrary.

104.    As a result of Defendants' willful violations of Kentucky law, Plaintiff Ware and the putative Kentucky Class are entitled to recover from Defendants their

unpaid overtime wages together with the costs of suit.

## COUNT III
### VIOLATION OF K.R.S. §§ 337.355 and 337.365
### (On Behalf of Plaintiff Ware and the Kentucky Class)

105.  All previous paragraphs are incorporated as though fully set forth herein.

106.  K.R.S. § 337.355 requires an employer to provide a meal period no sooner than three (3) hours after an employee's work shift commences and no more than five (5) hours from the time his work time commences.

107.  K.R.S. § 337.365 requires an employer to provide a rest period of at least ten (10) minutes during each four (4) hours worked, in addition to the regularly scheduled lunch period.

108.  Defendants violated K.R.S. §§ 337.355 and 337.365 because they did not provide Plaintiff Ware and other Consultants with paid meal or rest breaks, despite the fact that Plaintiff Ware and other Consultants often worked up to 12 hours in one day.

109.  This claim is brought on behalf of a class of similarly situated individuals who worked for ExecuTrain in Kentucky.

110.  As a result of Defendants' violations of K.R.S. §§ 337.355 and 337.365, Plaintiff Ware and the putative Kentucky Class are entitled to recover from Defendants their unpaid wages for meal and rest breaks.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek the following relief on behalf of themselves and the members of the Classes:

a. An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential members of the FLSA Collective;

c. An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Kentucky Class;

d. Back pay damages (including unpaid overtime compensation and unpaid wages) and prejudgment interest to the fullest extent permitted under the law;

e. Liquidated damages to the fullest extent permitted under the law;

f. Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

g. Such other and further relief as this Court deems just and proper.

Dated: April 24, 2019

Respectfully submitted,
JULIA WARE and RALPH EDWARDS,
individually and on behalf of others
similarly situated

David M. Blanchard*
BLANCHARD & WALKER, PLLC
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
Telephone: 734.929.4313
blanchard@bwlawonline.com

Shanon J. Carson*
Sarah R. Schalman-Bergen*
Alexandra K. Piazza*
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
scarson@bm.net
sschalman-bergen@bm.net
apiazza@bm.net

Harold Lichten*
Olena Savytska*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Facsimile: (617) 994-5801
hlichten@llrlaw.com
osavytska@llrlaw.com

*Attorneys for Plaintiffs and the
Proposed Collective and Class*

*\*Application for admission pro hac vice to
be filed.*

25