UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JULIA WARE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 19-183-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CKF ENTERPRISES, INC., et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This case involves a proposed class action under Rule 23 of the Federal Rules of Civil Procedure 23 and a Fair Labor Standards Act ("FLSA") collective action stemming from the alleged failure of Defendants CKF Enterprises, Inc., d/b/a ExecuTrain of Kentucky, d/b/a Optim Support, LLC ("CKF") and Crinda Francke to classify 632 consultants as employees rather than independent contractors and pay them appropriate overtime wages for hours worked in excess of forty over the course of specific workweeks. [Record No. 58-1] The parties reached a settlement in principle on December 23, 2019, [Record No. 49] and they have since drafted a proposed settlement agreement ("the proposed agreement"). [Record No. 58-2]

Plaintiffs Julia Ware and Ralph Edwards have now filed a motion requesting: preliminary approval of the proposed agreement; preliminary certification of the Rule 23 settlement class for the purposes of settlement; certification of the Fair Labor Standards Act collective; preliminary appointment of Ware and Edwards as class representatives; preliminary approval of Berger Montague PC, Lichten & Liss-Riordan, P.C., and Blanchard and Walker,

PLLC as class counsel; approval of notice to the settlement class pool; and approval of their proposed schedule and procedure for the final approval of the settlement agreement. CKF and Francke do not oppose the motion.

On March 4, 2020, the Court directed the plaintiffs to address whether the pending motion seeks *conditional* or *final* approval of the FLSA collective and whether the period to opt-in to the suit for the purposes of FLSA had ended. The plaintiffs responded two days later. [Record No. 61] They explain that they seek conditional, rather than final, certification of the FLSA collective. The plaintiffs intend to move for final approval of the collective when they seek final approval of the settlement and the Rule 23 class after dissemination of the notice of settlement and the filing of claim forms. [*Id.*] They also state that they have employed an informal opt-in process. Forty-six individuals have opted into the collective thus far by submitting opt-in forms and more will be able to opt-in by filing claim forms after the Court approves the settlement and the plaintiffs send claim forms to the settlement class pool with notices of settlement. [*Id.*]

However, the informality of the opt-in process and proposed course forward is concerning, given the terms of the proposed agreement and opt-in and settlement claims processes. The Court has considered the matter and finds preliminary approval of the proposed agreement is inappropriate at this time. And because the plaintiffs' other requests are tied to the terms of the proposed agreement, the entire motion will be denied without prejudice.

**I.**

The proposed agreement is inconsistent with the plaintiffs' understanding that individuals who submit claim forms after the court initially approves the settlement and they receive notices of the settlement ("post-approval filers") are opt-in plaintiffs. The settlement

claims process likewise reinforces that post-approval filers are not opt-in plaintiffs for the purposes of this litigation. This is a significant because one's status as an opt-in plaintiff in a FLSA action carries a legal effect.

The terms of the proposed agreement indicate that the opt-in plaintiffs and post-approval filers are distinct groups. The proposed agreement states that opt-in plaintiffs are "individuals, who at the time of Preliminary Approval, have already submitted an Opt-in Consent Form to join this Action." [Record No. 58-2, ¶ 11(s)] Opt-in plaintiffs are eligible class members, *i.e.*, individuals from the settlement class pool of 632 identified potential claimants who will receive a *pro rata* portion of their unpaid wages as settlement awards. [*Id.* at ¶ 28] Consultants are not "opt-in plaintiffs" if they do not submit opt-in forms prior to preliminary approval of the settlement. Still, they may be eligible class members if they are post-approval filers who submit claim forms after receiving notices of settlement. [*Id.*] Thus, while the proposed agreement allows both opt-in plaintiffs and post-approval filers to receive the same type of settlement award as eligible class members, it draws a formal distinction between the two groups.

The forms submitted by the two groups also suggest that they should be treated as distinct types of eligible class members contrary to the representations of the plaintiffs. The forty-six opt-in plaintiffs have submitted opt-in forms that explicitly account for plaintiffs' affirmative consent to opt-in to this FLSA suit brought under 19 U.S.C. § 216(b). [*E.g.*, Record No. 60-1] The proposed post-approval claim form does not mention opting-in to the FLSA collective and only accounts for claimants agreeing to be bound by the settlement agreement (which, as of now, does not consider them to be opt-in plaintiffs) and release of claims.

The plaintiffs state that post-approval filers will be opt-in plaintiffs [Record No 61], but the terms of the proposed agreement and the settlement award claims process do not support this position. Instead, they indicate that consultants who file a claim form after the preliminary approval of a settlement will not have opted-in for the purposes of FLSA. This distinction matters because opting-in has a legal effect in FLSA litigation. The plaintiffs bring their FLSA action under 29 U.S.C. § 216(b). [Record No. 1] This section provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Therefore, post-approval filers who are not considered opt-in plaintiffs and will not submit the FLSA opt-in consent forms under the proposed agreement are effectively not part of the collective.

## II.

The Court declines to preliminarily approve the proposed agreement because of the potential implications of the post-approval filers' statuses as individuals who are not part of the collective. The failure to account for post-approval filers as opt-in plaintiffs could unexpectedly and unreasonably prejudice the defendants as well as the post-approval filers.

"Employees are guaranteed certain rights by the FLSA, and public policy requires that these rights not be compromised by settlement." *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06-cv-299-JBC, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008). However, courts may approve settlements in certain cases, including those that, like this action, are brought under 29 U.S.C. § 216(b). *Id.* (citing *Lynn's Food Stores, Inc. v. U.S.*, 629 F.2d 1350 (11th Cir. 1982)). When evaluating whether a settlement is adequate, the Court "determine[s] whether the settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA

provisions.'" *Id.* (adopting the test articulated by *Lynn's Food Stores, Inc.*, 629 F.2d at 1355) (citation omitted); *see also Does 1-2 v. Déjà Vu Services, Inc.*, 925 F.3d 886 (6th Cir. 2019), *aff'g* 2017 WL 2629101, at *8 (E.D. Mich. Jun. 19, 2017) (affirming the approval of a settlement involving, *inter alia*, FLSA claims where the district court applied the *Lynn's Food Stores, Inc.* test).

The post-approval filers would receive a *pro rata* share of the settlement proceeds as eligible class members under the proposed agreement. [Record No. 58-2, ¶ 28] Additionally, they would release all legal claims or potential legal claims, including those arising under FLSA, that were or could have been alleged in the Complaint that are based on the facts alleged in the Complaint, arose prior to December 23, 2019, and are related to work performed while under contract with the defendants. [*Id.* at ¶ 15] In these regards, the proposed settlement is reasonable because the post-approval filers would be treated the same as opt-in plaintiffs. [*Id.* at ¶¶ 15 and 28]

However, their status as post-approval filers would render them irrelevant to final approval of the collective. Section 216(b) only allows "similarly-situated" employees to recover damages. "District courts determine whether plaintiffs are similarly situated in a two-step process, the first at the beginning of discovery and the second after all class plaintiffs have decided whether to opt-in and discovery has concluded." *White v. Baptist Mem. Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012) (citing *Comer v. Wal–Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006)). The first stage (i.e., conditional approval) requires that plaintiffs make a "modest factual showing" of "at least a 'colorable basis' for their claim that the class of putative plaintiffs exists and that the class members are similarly situated." *Berry v. Office of the Fayette Cty. Sheriff*, No. 5: 14-356-DCR, 2015 WL 476320, at *1 (E.D. Ky. Feb. 5,

2015) (citing *Comer*, 454 F.3d at 547; *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 596 (S.D. Ohio 2002)). The second stage requires courts to look at the evidence after discovery and all plaintiffs have opted-in to see whether the plaintiffs who have opted-in are, in fact, similarly situated. *E.g.*, *White*, 699 F.3d at 877.

Therefore, the post-approval filers, who are not opt-in plaintiffs, would not factor into a subsequent consideration of the collective. Assuming the parties expect all post-approval filers to be considered a part of the final collective,[1] the result would be unreasonable because the plaintiffs would only have to prove that the approximately forty-six opt-in consultants are similarly situated for the purposes of § 216(b). They would not have to demonstrate that any post-approval filers are similarly situated.

Further, the post-approval filers who do not opt-in under the terms of the proposed agreement would not toll the limitations periods on their claims. "For each 'opt-in' plaintiff who later joins the suit, the action is commenced, and the statute of limitations is tolled, on the date that plaintiff files his or her consent." *Noble v. Serco, Inc.*, No. 3:08-76-DCR, 2009 WL 3254143, at *2 (E.D. Ky. Oct. 7, 2009) (citing 29 U.S.C. § 256(b); *Hasken v. City of Louisville*, 234 F. Supp. 2d 688, 691 (W.D. Ky. 2002)). Here, of course, the defendants have agreed to a settlement and have not raised the statute of limitations against individual settlement class pool consultants who may receive settlement awards. But if the settlement falls through or is overturned at a later date, limitations periods may become a concern. And if they do, the post-

---

[1] It is difficult to actually ascertain whether the defendants understand the proposed agreement to exclude post-approval filers from the collective because they have not briefed their perspective on the proposed agreement. However, they did not oppose the plaintiff's pending motion [Record No. 58], and the plaintiffs have clarified their position that post-approval filers will be able to opt into the collective under the agreement. [Record No. 61]

approval filers will not have tolled their limitations periods even though they agreed to release their FLSA rights of action and agreed to receive settlement awards. This seems unreasonable and somewhat arbitrary given the plaintiffs' recent and cogent argument that class pool members should be allowed to become opt-in plaintiffs after preliminary approval and notice mailings.

In summary, the Court declines to preliminarily approve the proposed agreement because it has unreasonable implications that stem from the exclusion of post-approval filers from the collective. These unreasonable implications could unexpectedly prejudice both the defendants and post-approval filers at a later point in this case or in related litigation.

However, the Court notes that while the proposed agreement distinguishes between opt-in plaintiffs and post-approval filers, there does not appear to be any substantive reason why it must do so. In this regard, the Court tends to agree with the plaintiffs that, given the informality of the opt-in process to this point, consultants who wish to be a part of this lawsuit should be allowed to continue to opt-in after the preliminary approval of the settlement. Assuming that the parties intend that consultants be allowed to opt-in after preliminary approval, any forthcoming revised settlement proposal should remove the restriction that opt-in plaintiffs file prior to preliminary approval and formalize the post-approval opt-in process.

**III.**

Because revision of the proposed agreement and post-approval claims process is warranted and the motion's remaining requests are linked to preliminary approval of the proposed agreement, the Court will deny the motion in its entirety, without prejudice. However, the Court notes that the parties have reached a settlement in principle and will accordingly vacate the deadlines of the Court's November 22, 2019 Scheduling Order.

Accordingly, it is hereby

**ORDERED** as follows:

1. Plaintiff Julia Ware and Ralph Edwards' unopposed motion [Record No. 58] is **DENIED**, without prejudice.

2. Subject to Paragraph 3 below, all deadlines previously set regarding the plaintiffs' claims against Defendants CKF Enterprises, Inc., d/b/a ExecuTrain of Kentucky, d/b/a Optim Support, LLC ("CKF") and Crinda Francke are **VACATED**.

3. The plaintiffs shall have until **April 14, 2020**, to renew their motion and tender a revised proposed settlement agreement.

Dated: March 11, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky