UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JULIA WARE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 19-183-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CKF ENTERPRISES, INC., et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

This action involves the alleged failure of Defendants CKF Enterprises, Inc., d/b/a ExecuTrain of Kentucky, d/b/a Optim Support, LLC, and Crinda Francke (collectively, "ExecuTrain" or "the defendants") to classify consultants as employees rather than independent contractors in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Kentucky Wages and Hours Act ("KWHA"), Kentucky Revised Statutes ("KRS") § 337.010 *et seq.*  [Record No. 1] Plaintiffs Julia Ware and Ralph Edwards have filed one claim individually and on behalf of a collective for violation of the FLSA.  [*Id.*] Ware also proceeds with two claims for violation of the KWHA individually and on behalf of a class pursuant to Rule 23 of the Federal Rules of Civil Procedure.  [*Id.*]

The parties participated in a mediation on October 23, 2019, but were unable to resolve the disputed issues.  [Record No. 41] However, they eventually reached a settlement in principle two months later.  [Record No. 49] The plaintiffs previously filed an unopposed motion for, *inter alia*, conditional certification of the FLSA collective, preliminary

certification of the Rule 23 class, and preliminary approval of a settlement agreement.[1] [Record No. 58] The Court denied that motion without prejudice on March 11, 2020. [Record No. 62] The plaintiffs have now renewed their unopposed motion and have tendered an amended proposed settlement agreement ("the proposed agreement").   [Record No. 68] Specifically, they request: 1) preliminary approval of the proposed agreement; 2) conditional certification of the FLSA collective for the purposes of settlement; 3) preliminary certification of the Rule 23 class ("the Kentucky class") for the purposes of settlement; 4) preliminary appointment of Ware and Edwards as class representatives; 5) preliminary approval of the plaintiffs' counsel as class counsel; 6) approval of the FLSA collective settlement notice; 7) approval of the class settlement notice; and 8) approval of their proposed schedule and procedure for final approval of the agreement.  [*Id.*]  The Court considers these issues in turn.

## I. Relevant Terms of the Agreement

The parties have agreed to a $595,000.00 gross settlement amount.  [Record No. 68-2, ¶ 15(o)] The plaintiffs' counsel variably estimate that this figure represents approximately 60% or 70-80% of the alleged damages suffered by consultants working for CKF who were not paid appropriate wages under the FLSA and Kentucky law.  [Record No. 68-3, ¶ 12; 68-5, ¶ 9]

"Consultants form the pool of possible Settlement Participants" eligible to receive a settlement award and release claims under the proposed agreement.  [Record No. 68-2, ¶ 15(c)] Consultants are the individuals who:

> (i) personally or through a corporation or other business entity owned in whole or in part by the Consultant, contracted directly with CKF Enterprises, Inc., d/b/a ExecuTrain of Kentucky, d/b/a Optim Support, Inc. [] to perform go-live

---

[1]      Although courts often refer to the pool of plaintiffs who have opted into a collective action as the "class," the undersigned will refer to this group as the "collective" in this case to distinguish between this group and the Rule 23 class.

consulting work for customers of [CKF]; (ii) worked more than forty (40) hours in at least one (1) workweek while performing such work between April 25, 2016, and December 23, 2019 anywhere in the United States, or between April 25, 2014, and December 23, 2019 if in Kentucky; and (iii) [were] classified by [CKF] as an independent contractor while performing such work.

[*Id.*]  The plaintiffs have indicated that approximately 652 consultants stand to benefit from the agreement according to records produced by the defendants.  [*Id.*]

Of these 652 consultants, 530 are putative members of the FLSA collective, *i.e.* individuals who performed worked for CKF somewhere in the United States between April 25, 2016, and December 23, 2019.  [*Id.* at ¶ 15(m)] Three hundred eighty-one of the 652 consultants are putative members of the Kentucky class, as they performed work for CKF in Kentucky between April 25, 2014 and December 23, 2019.  [*Id.* at ¶ 15(q)] One hundred twenty-two of the consultants are only members of the Kentucky class and are not members of the collective because they did not work for the defendants between April 25, 2016, and December 23, 2019.  [*Id.* at ¶ 15(s)] Thus, 259 consultants are putative members of the FLSA collective and the Kentucky class.

The 530 putative FLSA collective members will receive a FLSA collective settlement notice and a FLSA opt-in consent and claim form subsequent to preliminary approval of the proposed agreement.  [*Id.* at ¶¶ 15(n)-(o)] This will allow individuals who have not yet opted into the collective action to opt-in.  Any individual who submits an opt-in form will be considered an opt-in plaintiff regardless of whether such a form was submitted prior to or after preliminary approval of the proposed agreement.  [*Id.* at ¶ 15(w)] The 122 consultants who are only putative members of the Kentucky class will receive "Kentucky Class Only" settlement notices and claim forms.  [*Id.* at ¶¶ 15(r) and 15(t)]

The proposed agreement outlines the notice process.   Within five business days of preliminary approval:

> Defendants shall provide to Plaintiffs' Counsel an electronic database ("Class List") containing the names, last known addresses, last known telephone numbers (if any), last known email addresses (if any), social security numbers or tax ID numbers of each individual Consultant, along with the total number of overtime hours paid at straight time rates that each worked for Defendants in Kentucky between April 25, 2014, and April 24, 2016, and total number of overtime hours paid at straight time rates that each worked for Defendants in any state from April 25, 2016, to December 23, 2019.  In order to provide the best notice practicable, prior to mailing the Settlement Notice and the Opt-in Consent and Claim Form, Plaintiffs' Counsel will make reasonable efforts to identify current addresses via public and proprietary systems.  Prior to mailing, Plaintiffs' Counsel shall use the National Change of Address Database to update any addresses.

[*Id.* at ¶ 21(d)] Within ten business days of receiving this information from CKF, the plaintiffs' counsel will make the following initial mailings:

> (i) to Named Plaintiffs and Plaintiffs [who have previously opted-in], the Court-approved FLSA Collective Settlement Notice, by U.S. First Class Mail and by email; (ii) to all other putative FLSA Collective Members, the Court-approved FLSA Collective Settlement Notice and FLSA Collective Opt-in Consent and Claim Form, by U.S. First Class Mail and by email; and (iii) to Kentucky Class Only Consultants, the Court-approved Kentucky Class Only Settlement Notice and Kentucky Class Only Claim Form, by U.S. First Class Mail and by email.

[*Id.* at ¶ 21(e)]

Under the proposed agreement, putative collective members who have not already opted in will have sixty days from the initial mailing to submit a claim form and opt-in, consultants who are putative members of the Kentucky class will have sixty days to opt-out, and all consultants will have sixty days to object to the settlement.  [*Id.* at ¶¶ 15(b), 21(j), and 22-23] The parties will accept late claim forms returned within thirty days of this sixty-day deadline.  [*Id.* at ¶ 21(j)] Additionally, the plaintiffs' counsel will send duplicate notices and claim forms to consultants who fail to submit a claim form within thirty calendar days of the

- 4 -

initial mailing.  [*Id.* at ¶ 21(h)] "Consultants may submit their Claim Forms via regular mail, electronic mail, or facsimile and, on a website that will be established by Plaintiffs' Counsel, they may execute and submit their Claim Forms online through DocuSign or a comparable electronic signature service."  [*Id.* at 21(i)]

Several payments and costs are deducted from the $595,000.00 gross settlement amount to determine the net settlement amount of the proposed agreement, *i.e.* the amount which will be allocated to consultants who decide to participate in the settlement.  [*Id.* at ¶ 15(v)] Ten thousand dollars is allocated to Ware and Edwards ($5,000.00 apiece) as service awards for their efforts as named plaintiffs.  [*Id.*]  Up to $198,333.33, one-third of the gross settlement amount, in attorney's fees plus plaintiffs' counsel's out-of-pocket costs currently estimated to be $5,652.68 are deducted from the gross settlement amount.  [*Id.* at ¶¶ 15(v) and 29(b)] Settlement administration costs are also deducted from the gross settlement amount, and they are not expected to exceed $6,000.00.  [*Id.*]  Estimating that administration costs are $6,000.00, Ware and Edwards take $5,000.00 service awards, and plaintiffs' counsel takes $198,333.33 while expending $5,652.68 out-of-pocket, the net settlement amount to be paid out to individual claimants under the proposed agreement would be approximately $375,013.99.

Consultants who decide to participate in the settlement will receive *per capita* and *pro rata* allocations from the net settlement amount.  Each participating consultant will receive a *per capita* $100.00 award in exchange for the applicable release of claims.  [*Id.* at ¶ 31(a)] The remaining money from the net settlement amount will then be divided *pro rata* among consultants participating in the settlement "based on the actual number of uncompensated overtime hours" as determined by the defendants' timekeeping and payroll records.  [*Id.* at ¶¶

31(b)(i) and 33] "Each such uncompensated overtime hour paid will be equal to one (1) settlement share." [*Id.* at ¶ 31(b)(i)]

> The total number of settlement shares for such Settlement Participants will be added together and the Net Settlement Amount remaining after the per capita share allocations will be divided by the resulting sum to reach a per share dollar figure. That figure will then be multiplied by the number of settlement shares for each Settlement Participant to determine that individual's *pro rata* component.

[*Id.* at ¶ 31(b)(ii)]

The "effective date" of the proposed agreement is one business day after the Court's final approval of the agreement "reaches finality and is no longer appealable." [*Id.* at ¶ 15(g)] The plaintiffs' counsel will mail settlement checks to participating consultants within fifteen calendar days of the effective date. [*Id.* at ¶ 36] The checks will remain valid and negotiable for 180 calendar days from their issuance dates. [*Id.* at ¶ 37] The proposed agreement provides that any funds remaining from uncashed checks at the end of 180 days shall go to their chosen *cy pres* recipient, Hope Center, Inc., "a Kentucky nonprofit that provides services for homeless and at-risk persons in Kentucky, including employment services." [Record No. 68-1, p. 8 n. 1; 68-2, ¶ 38]

Finally, as relevant here, the proposed agreement provides for the release of certain claims by participating consultants effective upon final approval of the agreement. Opt-in plaintiffs:

> shall be deemed to have released and discharged Defendants and all Releasees, finally, forever and with prejudice, from any and all causes of action, claims, rights, damages, punitive or statutory damages, penalties, liabilities, expenses and losses and issues of any kind or nature whatsoever, whether known or unknown, against Defendants or Releasees that were or could have been asserted in the Complaint based on the facts alleged and that arose prior to

December 24, 2019, related to work performed under contract directly for Defendants.[2]

[Record No. 68-2, ¶ 18]

Released claims include those that could otherwise be asserted under the FLSA and all similar, derivative, and related Kentucky state law claims. [*Id.*] Participating Kentucky class members who are not also opt-in plaintiffs release the defendants and releasees from:

> any and all state law claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Defendants or Releasees, that were or could have been asserted in the Complaint based on the facts alleged, for unpaid wages, overtime compensation, liquidated or other damages, unpaid costs, restitution or other compensation or relief arising under Kentucky wage and hour laws, or state common law claims (including unjust enrichment or quantum meruit) related to work performed under contract directly for Defendants prior to December 24, 2019.

[*Id.* at ¶ 19] This ostensibly omits claims that may be asserted under the FLSA. The named plaintiffs have the broadest release of claims. They release the defendants and releasees from virtually all claims from any period of time for wages and hours law violations relating to their work for CKF. [*Id.* at ¶ 17]

---

[2]      "Releasees" under the proposed agreement are:

> Defendants and their respective present and former parent companies, subsidiaries, affiliates, divisions, and joint ventures, and all of their respective past and present shareholders, officers, directors, employees, agents, servants, owners, members, investors, executors, administrators, general partners, limited partners, real or alleged alter egos, predecessors, successors, transferees, assigns, registered representatives, attorneys, insurers, partners, profit sharing, savings, health and other employee benefit plans of any nature, the successors of such plans and those plans' respective trustees, administrators, agents, employees, attorneys, fiduciaries, and other persons acting on their behalf, and each of them, and the predecessors and successors, assigns and legal representatives of all such entities and individuals.

[Record No. 68-2, ¶ 15(bb)]

## II. Analysis

### A. Conditional Certification of the FLSA Collective

The Complaint alleges that CKF violated 29 U.S.C. § 207(a)(1) of the FLSA, which requires time-and-a-half pay for employees' work hours in excess of forty hours during a given week. [Record No. 1, p. 19-21]   The plaintiffs state that the consultants who are putative collective members were essentially employees of CKF and were underpaid for overtime work on its behalf. [*Id.*]

The FLSA provides that "[a]ny employer who violates the provisions of . . . section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).  "An action to recover unpaid overtime compensation under the FLSA may be maintained against any employer by 'any one or more employees for and in behalf of himself or themselves and other employees similarly situated.'" *Abney v. R.J. Corman R.R. Group*, No. 5: 17-260-DCR, 2017 WL 3723657, at *1 (E.D. Ky. Aug. 29, 2017) (quoting 29 U.S.C. § 216(b)).  However, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

Certification of a FLSA collective is generally a two-stage inquiry.  *Abney*, 2017 WL 3723657, at *1 (citing *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012)).  "During the 'notice stage,' the Court determines whether the [named] plaintiff has presented sufficient evidence of similarly-situated putative plaintiffs to warrant court-

facilitated notice and to conduct discovery." *Id.* (citing *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 545 (6th Cir. 2006)). The standard for conditional certification of a collective is "fairly lenient"– named plaintiffs need only show a "colorable basis" for their allegations "that a class of similarly-situated putative plaintiffs exists and that the class members together were victims of an unlawful policy." *Id.* (citing *Comer*, 454 F.3d at 547; *Berry v. Office of the Fayette Cty. Sheriff*, No. 5: 14-cv-356-DCR, 2015 WL 476320, at *2 (E.D. Ky. Feb. 5, 2015)). After the collective is conditionally certified, notice is sent to all putative collective members, and all putative members have the opportunity to consent and opt into the action, the Court moves to stage two of the inquiry. *Id.* The Court applies a "stricter standard" at the second stage "and more closely examines 'the question of whether particular members of the class are, in fact, similarly situated.'" *White*, 699 F.3d at 877 (quoting *Comer*, 454 F.3d at 547).

"The FLSA does not define 'similarly situated,' but it is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Abney*, 2017 WL 3723657, at *2 (citing *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016)). Declarations of opt-in plaintiffs may be sufficient to establish that putative collective members are similarly situated at the first stage of collective action certification. *See id.* Allegations based on hearsay may also be sufficient. *See Davis v. Omnicare*, No. 5: 18-cv-142-REW, 2019 WL 6499127, at *4 (E.D. Ky. Dec. 3, 2019) (citations omitted); *Williams v. King Bee Delivery Co., LLC*, No. 5: 15-cv-306-JMH, 2017 WL 987452, at *4 (E.D. Ky. March 4, 2017) (citations omitted).

CKF has stipulated in the proposed agreement, for the purposes of settlement only, that certification requirements of the FLSA have been met. [Record No. 68-2, ¶ 13] Additionally, the plaintiffs have tendered the declarations of four individuals in support of their motion for certification. [Record No. 68-3, pp. 35-42]

Ware, a named plaintiff, states that she was classified as an independent contractor for CKF when she worked as a consultant at Covenant Health in Knoxville, Tennessee from September 18, 2018, to October 2, 2018, and Appalachian Regional Healthcare in Hazard, Kentucky from February 1, 2019, to February 15, 2019. [*Id.* at p. 35] She trained hospital staff to use MEDITECH and Cerner, electronic record-keeping software, on behalf of CKF. [*Id.* at p. 36] As a consultant for CKF, Ware "was paid 'straight time' for all hours worked[] and [] did not receive any overtime premium for hours worked in excess of forty (40) a week" in accordance with the terms of her contract with CKF. [*Id.*] She states that she "worked with approximately 150 other [CKF] Consultants at Covenant Health and approximately 200 other [CKF] Consultants at Appalachian Regional Health." [*Id.* at p. 35] Ware indicates that she is "aware that other Consultants also worked overtime and were not paid an overtime premium." [*Id.* at p. 36]

Edwards, the other named plaintiff, states that he worked as a CKF consultant at Covenant Health in Knoxville from April to October 2018. [*Id.* at p. 37] CKF classified him as an independent contractor, and he provided support and training regarding the use of electronic record-keeping software for medical records to healthcare staff. [*Id.*] His contract with CKF specified that he would be paid a set hourly rate for all hours worked, and he was not paid time-and-a-half for hours in excess of forty in a given week. [*Id.*] Edwards states that he worked with 170-200 other CKF consultants who had the same responsibilities as he did.

[*Id.* at p. 38] Based on conversations with these individuals, he understands that they were not paid time-and-a-half for overtime work. [*Id.*]

The plaintiffs have also offered the declaration of Bernadette Parnell, a consultant who has already opted into the collective action. [Record Nos. 44-1, p. 2 and 68-3, pp. 39-40] She worked as a consultant for CKF at Covenant Health in Knoxville from May to August 2018 and was also classified as an independent contractor. [Record No. 68-3, p. 39] Parnell indicates she "provide[d] at-the-elbow training for doctors and nurses, showing them how to input, save, and retrieve medical records using the Cerner software, and answering any questions they had about using the Cerner electronic recordkeeping system." [*Id.*] She was not paid time-and-a-half for overtime work hours in accordance with the terms of her contract with CKF. [*Id.* at p. 40] She states that she worked with over 100 additional CKF consultants who she believes, based on conversations, similarly worked more than forty hours per week without receiving time-and-a-half pay for overtime hours. [*Id.*]

Finally, the plaintiffs have submitted the declaration of Grady Moody, another opt-in plaintiff. [Record Nos. 44-1, p. 3 and 68-3, pp. 41-42] Moody worked as a CKF consultant at Covenant Health in Tennessee and West Virginia from July 2018 to January 2019. [Record No. 68-3, p. 41] He attests to independent contractor classification, work responsibilities, and pay conditions similar to those of the other declarations and likewise indicates that other CKF consultants working with him were not paid time-and-a-half for overtime work. [*Id.* at pp. 41-42]

It appears that the plaintiffs have offered sufficient evidence under the lenient first stage standard to conditionally certify the collective in this case. The declarants (both named plaintiffs and opt-in plaintiffs) appear to have been subject to CKF's policy regarding

independent contractor classification and straight time rate pay as dictated by the similar terms of their contracts with CKF. Further, they have indicated (albeit through hearsay) that significant numbers of other CKF consultants were subjected to the same pay policy through their contracts and interactions with CKF. All relevant consultants appear to have performed essentially the same services for CKF as the named plaintiffs by conducting training and support for healthcare workers who use electronic record-keeping systems. Finally, CKF's pay policy is alleged to be in violation of the FLSA for all putative collective members.

Under the lenient standard, the putative collective members appear to be similarly situated. Therefore, the Court agrees that conditional certification is appropriate at this time.

### B. Preliminary Certification of the Rule 23 Kentucky Class and Related Issues

"Before the Court can preliminarily approve [a] class action settlement, it must preliminarily certify the class under Rule 23(a) and (b) of the Federal Rules of the Civil Procedure, appoint class counsel, and approve the class representative." *Peck v. Air Evac. EMS, Inc.*, No. 5: 18-615-DCR, 2019 WL 3219150, at *2 (E.D. Ky. Jul. 17, 2019). The defendants have stipulated to the certification of the Kentucky class in this case under Rules 23(a) and 23(b)(3) for the purposes of settlement, but an independent certification analysis is necessary. *Int'l Union, UAW v. General Motors Corp.*, 497 F.3d 615, 625 (6th Cir. 2007). The Court therefore turns to the plaintiffs' request to preliminarily certify the class.

### 1. The Class Definition

Before conducting a class certification analysis under Rule 23(a) and (b), the Court must consider whether "the class definition [is] sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Ins. Co.*, 693 F.3d 532, 637-38 (6th Cir. 2012)

(internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 23(c)(1)(B).  Here, the putative class is sufficiently definite.  The parties have agreed that putative class members worked as consultants for CKF between April 25, 2014, and December 23, 2019, in Kentucky, and performed allegedly underpaid overtime work.  And although the plaintiffs have not produced CKF's records that form the basis of their knowledge of putative class members, the parties appear to agree that these records evidence 381 potential Kentucky class members. Because the putative class' membership is directly derived from CKF's records indicating individuals worked on its behalf in Kentucky during the specified period, the proposed class is sufficiently definite such that it is administratively feasible to determine whether an individual is a member.  The class will include the approximately 381 consultants identified by CKF's records who worked for the company between April 25, 2014, and December 23, 2019, in Kentucky and were classified as independent contractors.

### 2. Rule 23(a) Prerequisites

Rule 23(a) outlines "prerequisites" for maintaining a class action:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These prerequisites are often referred to as "numerosity, commonality, typicality, and adequacy."  *See Peck*, 2019 WL 3219150, at *2.  These prerequisites are met for the purposes of preliminary certification in this case as to Ware, specifically, as class representative.

First, the numerosity requirement. "[W]hile there is no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement." *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (citing *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996)). Courts may look at the facts of a specific case to determine whether the number of putative class members is sufficiently great that joinder is impracticable, but "[w]hen class size reaches substantial proportions . . . the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys.*, 75 F.3d at 1079. There are alleged to be 381 putative class members, and this number is ostensibly high enough itself to render joinder impracticable. Thus, the numerosity requirement is satisfied. *See* Fed. R. Civ. P. 23(a)(1).

The commonality requirement is also satisfied here. "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," but "[t]his does not mean merely that they have all suffered a violation of the same provision of law." *Walmart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (internal citation omitted). Instead, "claims must depend on a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* The validity of the Kentucky claims depends on the central contention that the consultants in Kentucky were actually employees, rather than independent contractors, of CKF because the protections of the KWHA only apply to employees. *See* KRS § 337.285; *see also* KRS § 337.010 (defining "employee" for the purposes of the KWHA).[3] Therefore, a common question underlies the Kentucky class' claims.

---

[3]     At this point, the Court makes one observation of equal importance to preliminary class certification and preliminary approval of the proposed agreement. Whether by mistake or by

- 14 -

The typicality prerequisite is met for Ware. "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys.*, 75 F.3d at 1082 (quotation and citations omitted). Ware asserts CKF's independent contractor classification and pay policies gave rise to her claims. The same is true for the Kentucky class.

The plaintiffs' motion appears to state that Edwards' claims meet the typicality requirement, and it generally requests that Edwards be approved as a class representative. [Record Nos. 68 and 68-1, pp. 2, 27] *However, this argument conflates the FLSA and class action analyses.* Edwards is a named plaintiff as to the FLSA claim, but the Complaint does not name him as a class representative for the Kentucky class. [*See* Record No. 1] Instead, it states that Ware alone brings the KWHA claims on behalf of herself and the class. [*Id.* at pp. 21-23] And Edwards' declaration indicates that he performed work for CKF in Tennessee.

---

design, nothing in the proposed agreement, the proposed notices, or the plaintiffs' motion references the specific KWHA sections that the Complaint alleges the defendants violated. However, the parties seem to have proceeded with the understanding that the Kentucky class (like the FLSA collective) will be compensated purely for underpaid *overtime* hours worked during a set period of time (the alleged violation of KRS § 337.285). It does not appear that the parties have directly contemplated compensation for the violations of KRS §§ 337.050, 337.355, and 337.365 alleged in the Complaint. [Record No. 1, pp. 21-23] These allegations involve underpaid hours during seven-day workweeks and claims that CKF did not provide lunch and rest breaks. [*Id.*]

However, the failure to directly account for these claims does not substantively affect preliminary certification or preliminary approval of the proposed agreement. While it is true that unnamed class members participating in the settlement will almost certainly release such claims for alleged violations of these three sections, any uncompensated or undercompensated hours appear to be covered by the recovery allocated for failure to pay appropriate overtime wages under KRS § 337.285. In other words, the underpaid overtime hours should include the uncompensated or undercompensated hours relevant to the other KWHA sections. Assuming the plaintiffs' counsel diligently accounts for all underpaid hours when determining the *pro rata* shares of the Kentucky class, this issue should not present a problem for certification and approval of the proposed agreement.

There is no evidence that he consulted for CKF in Kentucky or that he would have any claims under Kentucky law. Thus, the typicality prerequisite is not met as to Edwards. And more generally, he cannot serve as a class representative for the Kentucky class under Rule 23.

Finally, the Court addresses the adequacy requirement. The United States Court of Appeals for the Sixth Circuit has "articulated two criteria for determining adequacy of representation: '1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Am. Med. Sys.*, 75 F.3d at 1083 (quoting *Senter v. General Motors Corp.*, 532 F.2d 511, 5252 (6th Cir. 1976)).

The counsel component of the adequacy requirement is met in this case. Harold Lichten of Lichten & Liss-Riordan, P.C., Sarah Schalman-Bergen of Berger Montague PC, and David Blanchard of Blanchard & Walker, PLLC, have provided evidence of extensive personal and firmwide experience in class (and collective) action litigation. [Record Nos. 68-3, 68-4, and 68-5] As for the class representative components of adequacy, Ware is a member of the putative Kentucky class and purportedly shares the same interests. Further, the plaintiffs' attorneys have attested to the cooperation and diligence of Ware (as well as Edwards). [Record No. 68-3, ¶ 31] The indication, at this point in the litigation, is that the Rule 23(a)(4) adequacy prerequisite is met as to Ware as class representative.

Thus, the Court finds that all Rule 23(a) prerequisites are met as to Ware for the purposes of preliminary certification.

### 3. Rule 23(b)(3) Requirements

Rule 23(b) prescribes three types of class actions that may be maintained if a plaintiff has demonstrated that the Rule 23(a) prerequisites are satisfied. Rule 23(b)(3) describes the

type of class action that is relevant here.   It provides that such a class action may be maintained

if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> > (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> > (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

In this case, common questions of law and fact predominate over questions affecting

individual members of the Kentucky class.  The "predominance" inquiry requires the Court

"to assess the legal or factual questions that qualify each class member's case as a genuine

controversy . . . and assess whether those questions are subject to generalized proof, and thus

applicable to the class as a whole." *Sandusky Wellness Center, LLC v. ASD Specialty*

*Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017) (citing *Amchem Prods., Inc. v. Windsor*,

521 U.S. 591, 623 (1997); *Bridging Cmtys., Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124

(6th Cir. 2016)) (internal quotation marks omitted).  The legal and factual issues of all putative

class members involve whether CKF's apparently contractual policy of classifying Kentucky

consultants as independent contractors and paying them accordingly violated the KWHA

because they were, in reality, employees.  Based on the declarations provided by the plaintiffs,

these issues are likely subject to generalized proof documenting the consultants' similar roles

and responsibilities while working for CKF as well as CKF's payroll and timekeeping records.

Further, a class action in this district appears to be the superior method to resolve the CKF misclassification issue.  There is no indication that any individual class members have instituted their own individual claims regarding this matter.  Ware has already conducted a considerable amount of discovery to determine the size and scope of the Kentucky class and has undertaken arm's-length negotiations with the defendants to craft a settlement.  CKF is based in Lexington [Record No. 30, ¶ 11], and although it is possible that some of the Kentucky consultants performed work in other parts of the state, Ware's claims specifically arise out of work performed at Appalachian Regional Health in Hazard and she has indicated that she worked with approximately 200 other CKF consultants there.  Lexington and Hazard are located within the Eastern District of Kentucky. It appears that a class action aggregating the Kentucky claims in this district would be a superior method of adjudicating the dispute common to all putative class members, and there is no indication that such an action would be difficult to manage.

Ware's class claims satisfy the Rule 23(a) prerequisites and the requirements of Rule 23(b)(3) as they pertain to this action.  The Court will preliminarily certify the Kentucky class for the purposes of settlement.

### 4. Ware as Class Representative

Having certified the class, the Court will appoint Ware as class representative.  As discussed, Edwards is a named plaintiff for the purposes of the FLSA collective and his related individual federal law claim only.  He may not serve as a class representative for the purposes of the class action.

- 18 -

**5. The Plaintiffs' Counsel as Class Counsel**

Rule 23(g)(1) requires the Court to appoint class counsel.  In making this determination, the Court evaluates:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class;

Fed. R. Civ. P. 23(g)(1)(A).  The Court "may [also] consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  Counsel appointed "must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(4).

The plaintiffs' attorneys have moved to be appointed as class counsel [Record No. 68], and the Court finds that they fit the requirements of Rule 23(g).  Counsel has spent considerable time investigating the claims and number of the Kentucky class, working with the defendants to identify putative class members whose work history with CKF in Kentucky aligns with that of Ware.  Counsel from the three plaintiffs' firms have documented personal and firmwide experience with similar class and collective action claims.  It is apparent that they are reasonably familiar with the applicable law.  The plaintiffs' attorneys have already expended $5,652.68 out-of-pocket and project to spend approximately $6,000.00 to administer the settlement.  Finally, it is evident that they will fairly and adequately represent the interests of the class.  Thus, the Court will appoint Harold Lichten and Olena Savytska Lichten & Liss-Riordan, P.C., Sarah Schalman-Bergen and Alexandra Piazza of Berger Montague PC, and David Blanchard and Frances Hollander of Blanchard & Walker, PLLC, as class counsel.

## C. Preliminary Approval of the Proposed Agreement

Having conditionally certified the FLSA collective and Rule 23 Kentucky class, the Court turns to the issue of preliminary approval of the proposed agreement.  The standards for judicial approval of FLSA and Rule 23 settlements are similar but vary slightly.

"[T]he FLSA creates a statutory entitlement" to "compensation at a rate of one and one-half times the employee's regular rate for overtime work."  *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06-cv-299-JBC, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008) (citations omitted).  Agreements between employers and employees that provide for lower wages that those mandated by the FLSA contravene the statute's policy, and private settlements or waivers of rights are therefore prohibited.  *Id.*  (citing *Martin v. Indiana Michigan Power Co.*, 292 F. Supp. 2d 947 (W.D. Mich. 2002)).  However, a federal district court may oversee a FLSA settlement.  *Id.* (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982)).  Judicial approval of a FLSA settlement is appropriate if the agreement is "a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions."  *Lynn's Food Stores*, 679 F.2d at 1355; *Crawford*, 2008 WL 4724499, at *2 (citations omitted); *see also Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886 (6th Cir. 2019), *aff'g* 2017 WL 2629101, at *8 (E.D. Mich. Jun. 19, 2017) (affirming the approval of a settlement involving, *inter alia*, FLSA claims where the district court applied the *Lynn's Food Stores* standard).

Rule 23 also requires judicial approval for class action settlements.  Fed. R. Civ. P. 23(e).  Approval of a class action settlement is a three-step process: (1) preliminary approval of the proposed agreement; (2) adequate notice to putative class members; and (3) final approval of the proposed agreement following a hearing on the fairness, reasonableness, and adequacy of the settlement.  *Peck*, 2019 WL 3219150, at *5 (citing *Thacker v. Chesapeake

- 20 -

*Appalachia, L.L.C.*, 259 F.R.D. 262, 270 (E.D. Ky. 2009)); *see also* Fed. R. Civ. P. 23(e)(1)-(2).  "To preliminarily approve the class settlement, the Court must determine whether the proposed settlement would be 'fair, reasonable, and adequate.'"  *Peck*, 2019 WL 3219150, at *5 (citing *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016)); *see also* Fed. R. Civ. P. 23(e)(2).

With these standards and related issues in mind, the Court addresses the sufficiency of the proposed agreement.

### 1. *Bona Fide* Dispute over the FLSA Provisions

The Court may only approve the proposed agreement as it pertains to the FLSA claims if there is a "*bona fide* dispute over FLSA provisions."  *Lynn's Food Stores*, 679 F.2d at 1355.  Such provisions include, *inter alia*, the FLSA's coverage of specific agency relationships.  *Id.* at 1354.  Here, there is a clearly a *bona fide* dispute.  Ware and Edwards allege that CKF violated 29 U.S.C. § 207 because it did not appropriately pay overtime wages to them and other putative members of the collective.  However, this is only true if, as the plaintiffs allege, the consultants were employees rather than independent contractors because the FLSA does not require overtime rates for independent contractors.  *See, e.g.*, *Keller v. Miri Microsystems, LLC*, 781 F.3d 799, 804 (6th Cir. 2015).

The defendants have previously maintained for the purposes of litigation that the consultants were properly classified as independent contractors and that the FLSA does not apply.  [Record No. 30, ¶ 113] The parties conducted a mediation in October 2019 and were unable to resolve the matter.  This action clearly involves a *bona fide* dispute over the FLSA's coverage of the relationships between the consultants and CKF.  Therefore, this requirement for FLSA settlements is satisfied.

## 2. Fairness, Reasonableness, and Adequacy of the Settlement under the FLSA and Rule 23

The Sixth Circuit has indicated that courts should use the same standard to assess the fairness, reasonableness, and adequacy of a settlement under Rule 23 and the FLSA in actions that involve both class and collective action claims. *See Déjà Vu Servs.*, 925 F.3d at 894-99. In such cases, courts evaluate settlements using the *UAW* fairness factors: (1) the "risk of fraud or collusion," (2) the "complexity, expense and likely duration of the litigation," (3) the "amount of discovery engaged in by the parties," (4) the "likelihood of success on the merits," (5) the "opinions of class counsel and class representatives," (6) the "reaction of absent class members," and (7) the "public interest." *Id.* at 894-95 (citing *UAW*, 497 F.3d at 631. Additionally, Rule 23(e)(2) prescribes additional factors to determine whether a proposed class action settlement is fair, reasonable, and adequate. The Court will consider all factors relevant to preliminary approval.

### a. The *UAW* Factors

### i. The Likelihood of Success on the Merits

The "likelihood of success on the merits" is the most important factor and warrants discussion before the others. *Id.* at 895 (citing *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011)). This is not simply an estimation of the plaintiffs' chances of success on the merits, but rather a balancing of the likelihood of success "against the amount and form of the relief offered in the settlement." *Id.* (citing *UAW*, 497 F.3d at 631) (internal quotation marks omitted). "When extinguishing the claims of a large class of people—some of whom may not even be aware that a pending lawsuit affects

their rights—courts are required to closely analyze whether the claims that the unnamed class members are giving up are worth the benefits they may receive." *Id.*

In this case, the likelihood of success itself is not particularly clear. Success on the merits for the FLSA and KWHA claims would undoubtedly hinge on whether the consultants were actually employees of CKF. The FLSA's definition of "employee" is "strikingly broad," and courts consider six "economic reality" factors to determine whether individuals are employees or independent contractors for the purposes of the statute:

> (1) the permanency of the relationship between the parties; (2) the degree of skill required for the rendering of the services; (3) the worker's investment in equipment or materials for the task; (4) the worker's opportunity for profit or loss, depending upon his skill; ... (5) the degree of the alleged employer's right to control the manner in which the work is performed ... and (6) whether the service rendered is an integral part of the alleged employer's business.

*Acosta v. Off Duty Police Servs., Inc.*, 915 F.3d 1050, 1055 (6th Cir. 2019) (quoting *Keller*, 781 F.3d at 807).

Based on the allegations of the named plaintiffs, the declarations offered by the plaintiffs in support of their motion, and the preexisting opt-in consent forms' documentation of opt-in plaintiffs' dates working for CKF, it seems fair to assume that the majority of putative collective plaintiffs performed one or two terms of several months consulting for CKF. This weighs against the plaintiffs' claims that they were employees. *Id.* at 1058 (noting that independent contractors generally perform "itinerant work" like that of the consultants).

The declarations of the named plaintiffs and two opt-in plaintiffs all indicate that the consultants "did not work as a computer systems analyst, computer programmer, or software engineer" or have duties that "involved the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs." [Record No. 68-3, pp.

35-42] There is an indication that their duties primarily consisted of "point[ing] on the [computer] screen and show[ing healthcare] staff where to click" using the relevant software. [*Id.* at p. 36] This is a relatively simple task and weighs in favor of employee status. *See Acosta*, 915 F.3d at 1056 (indicating that a lower degree of skill required to perform services accords with employee status).

There is nothing in the record to suggest that the consultants invested in any specialized materials to perform their tasks, and this factor accordingly weighs in favor of employee status. *Id.* at 1057. Additionally, there did not appear to be any opportunity for profit or loss depending on the skills of the individual consultants, as their pay was hourly and did not appear to have any contingencies based on the quality of their performances. *Id.* at 1059 ("Because . . . workers earned set wages to perform low-skilled jobs for fixed periods of time, this factor supports employee status . . . ."). This is difficult to determine with certainty because the plaintiffs have not supplied any of CKF's consultant contracts. Still, there is no indication that consultants "could exercise or hone their managerial skill[s] to increase their pay," and this factor likely favors employee status. *Id.* at 1059 (quoting *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 309 (4th Cir. 2006)). The record does not offer considerable evidence to evaluate CKF's right to control the consultants or whether the consultants' services were an integral part of its business.

On the whole, the factors appear to weigh in favor of employee status for the consultants and indicate at least a modest chance of success on the merits. However, at least one significant factor (permanency of the relationship) clearly weighs against success on the merits, and the record is relatively sparse at this time. Thus, the Court cannot say with any degree of certainty that the plaintiffs would or would not likely be successful on the merits of their FLSA claim.

- 24 -

Likewise, it is difficult to project the likelihood of success under the KWHA.  "The overtime provisions of the FLSA and Kentucky wage and hour law are co-extensive and analyzed identically."  *McCartt v. Kellogg USA, Inc.*, 139 F. Supp. 3d 843, 857 (E.D. Ky. 2015) (citing *City of Louisville, Div. of Fire v. Fire Serv. Managers Ass'n*, 212 S.W.3d 89, 92 (Ky. 2006)).  However, an "employee" for the purposes of KRS § 337.285, the Kentucky overtime wage statute, excludes various classes of workers.  *See* KRS § 337.010(2)(a). Plaintiffs bear the burden of proving that they do not fall within these excluded classes.  *E.g.*, *In re Amazon.com, Inc., Fulfillment Center FLSA and Wage and Hour Litigation*, 852 F.3d 601, 611 (6th Cir. 2017) (citing *City of Louisville*, 212 S.W.3d at 94).

The proof offered by Ware and the declarants does not definitively establish a likelihood or unlikelihood of "employee" classification and success on the merits for the KRS § 337.285 overtime wages claim.  And although it appears that the more expansive "employee" definition applies for the KRS §§ 337.050, 337.355, and 337.365 claims alleged in the Complaint, the likelihood of success on the merits remains unclear.  *See* KRS § 337.010(1)(e).

The plaintiffs' attorneys have broadly projected that the $595,000.00 gross settlement amount is somewhere between 60-80% of total unpaid wages owed to the putative collective and class members.  And, as the plaintiffs note, it is very unlikely that the settlement participation rate will approach 100% because the majority of the consultants are putative FLSA collective members who will have to affirmatively opt-in to receive *pro rata* and *per capita* allocations.  [Record No. 68-1, p. 15 n. 7] Therefore, it seems likely that the consultants who participate will receive a substantial portion of unpaid wages, even after the deductions that determine the net settlement amount, in exchange for their release of claims.

- 25 -

The Court cannot conclude with any certainty the likelihood of success on the merits for any of the collective and class claims, but significant risks remain.  Given the uncertainty of the plaintiffs' chances of success, the release of claims and the relief afforded by the proposed agreement is fair, adequate, and reasonable.  The Court accordingly finds that this most important *UAW* factor weighs in favor of approving the proposed agreement.

### ii. Risk of Fraud or Collusion

There is no evidence of fraud or collusion.

> [C]ourts customarily demand evidence of improper incentives for the class representatives or class counsel—such as a promise of excessive attorney fees in return for a low-cost, expedited settlement—before abandoning the presumption that the class representatives and counsel handled their responsibilities with the independent vigor that the adversarial process demands.

*UAW*, 497 F.3d at 628 (citations omitted); *see also Crawford*, 2008 WL 4724499, at *6 ("In the absence of evidence to the contrary, the court may presume that no fraud occurred and that there was no collusion between counsel.") (citing *Redington v. Goodyear Tire & Rubber Co.*, No. 5:07CV1999, 2008 WL 3981461, at *18 (N.D. Ohio August 22, 2008)).  The record indicates that a *bona fide* dispute exists between the plaintiffs and the defendants, there was some amount of discovery to determine the extent and scope of collective and class claims, the parties conducted mediation, and the two sides conducted an arm's length settlement process that resulted in the terms of the proposed agreement.  There is no evidence of collusive activity, and this factor weighs in favor of settlement.

### iii. The Complexity, Expense, and Likely Duration of the Litigation

The complexity, expense, and likely duration of the litigation weighs in favor of approving the proposed agreement.  The Sixth Circuit has noted the complexity of cases involving overlapping FLSA collective and state law class action claims.  *See Déjà Vu Servs.*,

925 F.3d at 898. The Court likewise finds that this litigation regarding alleged misclassification of hundreds of consultants in violation of state and federal laws is complex.  And prior to the parties' notice of settlement, the Court had scheduled formal discovery and set the action for a ten-day trial beginning February 2, 2021.  [Record No. 46] The expense and duration of this lawsuit would be significant if there is no settlement.  Thus, this factor weighs in favor of approving the proposed agreement.

### iv. The Amount of Discovery Completed

The amount of discovery completed weighs in favor of the fairness, adequacy, and reasonableness of the proposed agreement.  The parties engaged in discovery prior to their mediation, and the defendants significantly produced the payroll and timekeeping data relied upon by the plaintiffs to define the collective and class and value the claims.  [Record No. 68-3, pp. 4, 8]  Even though a considerable amount of additional discovery on liability, damages, and the appropriateness of certification would be necessary if the Court were to reject the proposed agreement, the discovery conducted prior to this point in time appears to have been sufficient to define the class and value putative plaintiffs' claims.  Therefore, the Court finds that this factor weighs in favor of approving the proposed settlement.

### v. The Opinions of Class Counsel and Class Representatives

Class counsel "believe this Settlement will provide a substantial benefit to the Settlement Participants."  [Record No. 68-1, p. 17] As noted, counsel is experienced in the relevant areas of the law, and it appears that they have diligently negotiated the proposed agreement.  Thus, this factor indicates that the proposed agreement is fair, adequate, and reasonable.

### vi. The Public Interest

Evaluation of the public interest constitutes the last relevant *UAW* factor.[4]  "Settlement is the preferred means of resolving litigation."  *Crawford*, 2008 WL 4724499, at *9 (citations omitted).  "Courts have held that there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources."  *Déjà Vu Servs.*, 925 F.3d at 899 (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)) (internal quotation marks omitted)).  However, full enforcement of the FLSA represents a separate important public interest in ensuring that employers comply with federal employment laws.  *Id.*

Overall, this factor weighs in favor of preliminary approval.  Assuming, for the sake of argument, that the plaintiffs could prove all of their claims, the proposed agreement gives the defendants a good deal and weighs against the interest in fully enforcing the FLSA.  However, it is unclear how meritorious the plaintiffs' claims are, and the proposed agreement presents a fair, adequate, and reasonable compromise given this uncertainty.  Further, approval of the proposed agreement would serve the interest of resolving this complex case and conserving judicial resources.  Therefore, the final factor weighs in favor of preliminary approval.

All *UAW* factors weigh in favor of approving the proposed agreement.  Thus, the Court finds that the agreement is generally fair, reasonable, and adequate for the purposes of FLSA and Rule 23 settlements.

---

[4]     The "reaction of absent class members" is not relevant to the preliminary approval stage analysis.

### b. Additional Rule 23(e)(2) Factors

Rule 23(e)(2) prescribes additional factors relating to the fairness, reasonableness, and adequacy of a class action settlement. Several of these, including whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length," involve issues addressed in the analysis above. Fed. R. Civ. P. 23(e)(2)(A)-(B).

Another factor is whether "the relief provided for the class is adequate," which requires the Court to look at four other considerations:

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3)

Fed. R. Civ. P. 23(e)(2)(C). The Court has already addressed the costs, risks, and delay of the litigation. The method of distributing relief appears to be effective, as the proposed agreement provides a thorough plan for the identification of putative plaintiffs, the plaintiffs' counsel's notice mailing, plaintiffs' opt-in/opt-out procedures, and the mailing of settlement awards checks after final certification and approval of the proposed agreement.

The third Rule 23(e)(2)(iii) factor requires an evaluation of the attorney's fees. Courts may award attorney's fees and nontaxable costs that are "authorized by law or the parties' agreement" in Rule 23 class actions. Fed. R. Civ. P. 23(h). To assess the reasonableness of fees in the Rule 23 context, courts may employ either the common fund method or the lodestar method. *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279-80 (6th Cir. 2016). The Sixth Circuit "require[s] only that awards of attorney's fees by federal courts in common fund

cases be reasonable under the circumstances." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (citing *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983)).

Here, the parties have agreed to a common fund-based fee not to exceed one-third of the $595,000.00 gross settlement amount ($198,333.33). These numbers, of course, account for some money that will be paid out to consultants who are members of the FLSA collective and are not members of the Kentucky class. However, it is not facially unreasonable to use a common fund approach to aggregate collective and class action fees derived from a common settlement amount that will be used to pay both the FLSA and class action claims. *See Déjà Vu Servs.*, 925 F.3d at 898 (evaluating the district court's award of attorney's fees that amounted to 20-23% of settlement funds used to pay the FLSA and class action claims). And given the complexity of this action, the similar allegations underlying the state and federal claims, and the similar (although not identical) notice and claim processes, it seems reasonable and efficient to aggregate these fee awards as well as the pool of money that will be paid out to all collective and class members.

That said, one-third of the common fund is a reasonable fee in this case for the purposes of Rule 23. Six factors govern the reasonableness of class action fees:

> (1) the value of the benefit rendered to the plaintiff class [ ]; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996).

Although the plaintiffs have not provided information regarding the second and third factors, the other four weigh in favor of a one-third fee. The class will benefit from a relatively quick and adequate settlement, this percentage would incentivize attorneys to take such cases without providing class counsel with a windfall, the litigation is substantially complex, and counsel have demonstrated significant skill and standing. Additionally, courts within this circuit have found one-third common fund attorney's fee awards to be reasonable in similar complex failure-to-pay-overtime cases. *See*, *e.g.*, *Osman v. Grube*, No. 3: 16–cv–00802–JJH, 2018 WL 2095172, at *3 (N.D. Ohio May 4, 2018) (finding one-third of a $500,000.00 settlement to be reasonable a reasonable fee in a FLSA collective action); *Thorn v. Bob Evans Farms, Inc.*, No. 2: 12-cv-00768, 2016 WL 8140448, at *2-3 (S.D. Ohio Feb. 26, 2016) (approving a 32.92% fee in a FLSA and Rule 23 settlement agreement); *see also Hebert v. Chesapeake Operating, Inc.*, No. 2: 17-cv-852, 2019 WL 4574509, at *4-8 (S.D. Ohio Sept. 20, 2019) (rejecting a 40% fee in a case involving FLSA and class action claims while finding 33% to be a "typical" common fund fee award). Thus, the one-third common fund award is reasonable and weighs toward adequacy of relief for the purposes of Rule 23(e)(2)(C)(iii).

Rule 23(e)(2)(C)(iv) requires consideration of side agreements connected to the proposed agreement, but there do not appear to be any such agreements in this case.

Finally, Rule 23(e)(2)(D) states that the Court's fairness, reasonableness, and adequacy analysis must account for whether "the proposal treats class members equitably relative to each other." The proposed agreement treats the class members equitably. Like all consultants participating in the settlement, the Kentucky class members will receive $100 *per capita* payouts as well as *pro rata* settlement allocations that correlate to the number of hours they were allegedly undercompensated. The release of claims also appears to be fair for Kentucky

class members.  Some class members will ostensibly release more claims than others, but this discrepancy derives from the fact some class members will be opt-in plaintiffs who more broadly release claims related to the FLSA.  All opt-in plaintiffs who are also Kentucky class members will release the same claims, and all Kentucky class members who are not opt-in plaintiffs will release the same claims.  Therefore, the Court finds that the proposal treats the class members equitably relative to each other.

In summary, the Court finds that the proposed settlement is fair, reasonable, and adequate under the Rule 23(e)(2) factors.  And when considered alongside the *UAW* factor analysis, it appears that fairness, reasonableness, and adequacy considerations support preliminary approval of the proposed agreement.

### c. Other Issues Relating to Preliminary Approval

Various other terms of the proposed agreement do not squarely fit within the *bona fide* dispute and fairness analyses above but warrant scrutiny.  The Court will address these issues individually.

### i.  Attorney's Fees Under the FLSA

As explained above, the attorney's fees provided for in the proposed agreement are reasonable for the purposes of Rule 23.  And while the *UAW* factors may not have implicated a discussion of the fees as they pertain to the FLSA in this case, a brief discussion is warranted. "An award of attorney fees to a prevailing plaintiff under [29 U.S.C. § 216(b)] of the FLSA is mandatory, but the amount of the award is within the discretion of the judge."  *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).  Courts must award reasonable attorney's fees. *Id.*

As discussed previously, the common fund approach can be appropriate in cases involving settlement funds paid to a FLSA collective and a Rule 23 class. *Déjà Vu Servs.*, 925 F.3d at 898. And for the same reasons the Court found the attorney's fee reasonable in the Rule 23 context, the Court finds the one-third common fund fees to be reasonable under the FLSA.

### ii. Costs

The proposed agreement also provides for costs to be awarded to the plaintiffs to reimburse counsel's out-of-pocket expenses (estimated at $5,652.68) plus settlement administration costs (estimated at $6,000.00). Like attorney's fees, an award of costs to prevailing parties is mandatory under the FLSA. 29 U.S.C. § 216(b). Here, the costs appear to be reasonable.

### iii. Service Awards

The proposed agreement provides for $5,000.00 service awards to Ware and Edwards for their efforts as named plaintiffs. The Sixth Circuit has not laid out a clear cut rule regarding the propriety of service awards in common fund cases, but it has repeatedly cautioned that such incentive awards should not serve as mere "bounties" that named plaintiffs should expect to receive in exchange for little commitment and a quick settlement that may not align with the interests of unnamed plaintiffs. *See Shane Group, Inc. v. Blue Cross Blue shield of Michigan*, 825 F.3d 299, 311 (6th Cir. 2016); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013); *Hadix v. Johnson*, 322 F.3d 895, 897-98 (6th Cir. 2003). Courts within the Sixth Circuit have looked at several factors when determining whether to approve service incentive awards, including:

> (1) the action taken by the Class Representatives to protect the interests of the Class Members and others and whether these actions resulted in a substantial benefit to Class Members; (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the Class Representatives in pursuing the litigation.

*Ross v. Jack Rabbit Servs., LLC*, No. 3:14-cv-44-DJH, 2016 WL 7320890, at *5 (W.D. Ky. Dec. 15, 2016) (quoting *In re Sketchers Toning Shoe Prods. Liab. Litig.*, No. 3: 11-MD-2308-TBR, 2013 WL 2010702, at *5 (W.D. Ky. May 13, 2013); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991)); *see also*, *e.g.*, *M.R. v. Lyon*, No. 17-11184, 2018 WL 4179635, at 5 (E.D. Mich. Aug. 31, 2018); *Johnson v. W2007 Grace Acquisition I, Inc.*, No. 13-2777, 2015 WL 12001269, at *14 (W.D. Tenn. Dec. 4, 2015).

Here, it appears that the service awards are justified. The named plaintiffs have undertaken this action, and as noted above, it appears that the unnamed putative collective and class members will benefit substantially from the settlement. Further, as the plaintiffs argue, they have staked their reputation and future work prospects as consultants for other companies at risk by filing this action. [*See* Record No. 68-1, p. 18] They have also exposed themselves to some degree of risk by agreeing to release the broadest array of claims. [*Id.*] Edwards and Ware will essentially release all claims relating to their work for CKF with no temporal limitations under the proposed agreement. The plaintiffs' counsel's statements that Ware and Edwards have worked diligently on the case would not, by themselves and without substantiation, justify the awards. *See Shane Group, Inc.*, 825 F.3d at 311 (rejecting "conclusory" arguments that the incentive awards compensated the named plaintiffs for their work and requiring counsel to provide attorney time sheets to prove that the plaintiffs actually worked on the case). But the plaintiffs' other arguments weigh in favor of modest service awards. Accordingly, the Court finds that the $5,000.00 service awards are reasonable.

- 34 -

### iv. The *Cy Pres* Beneficiary

The parties also have agreed on Hope Center, Inc. as a *cy pres* beneficiary to receive any funds from uncashed checks distributed to consultants participating in the settlement. Generally, *cy pres* proposals that are not *de minimis* allocations of settlement funds should be noted to putative class members so that they have an opportunity to object. *E.g.*, *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 985, 1004 (N.D. Ohio 2016). Here, however, any funds distributed *cy pres* will be *de minimis*, and the plaintiffs have provided *cy pres* information in the most recent iteration of their notices of settlements. [Record No. 69-1, pp. 4, 14] The Court finds the *cy pres* beneficiary proposal to be reasonable at this time.

### v. Approval of the Notices and the Notice Process

The plaintiffs also request approval of the notices of settlement and opt-in/claim forms that are to be mailed and emailed to class and collective members as well as the notice process. Because the notices are not entirely adequate, the Court declines to approve them.

After conditional certification, the FLSA authorizes the Court to facilitate notice to the putative members of collective. *Williams*, 2017 WL 987452, at *5 (citing *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 171 (1989)). "In addition to facilitating notice, the FLSA allows courts to 'monitor[ ] preparation and distribution of the notice' to the putative members of the collective action, thereby 'ensur[ing] that it is timely, accurate, and informative.'" *Id.* at *7 (quoting *Hoffman-LaRoche*, 493 U.S. at 171-72).

Class actions have more extensive notice requirements. "The Due Process Clause [] gives unnamed class members the right to notice of the settlement of a class action," and "[t]o comport with the requirements of due process, notice must be reasonably calculated to reach interested parties." *Fidel v. Farley*, 534 F.3d 508, 513-14 (6th Cir. 2008) (internal quotation

marks and citations omitted).  Further, under Rule 23(c)(2)(B), a class action certified under

Rule 23(b)(3) requires that a notice of settlement be "the best notice that is practicable under

the circumstances" and "clearly and concisely state in plain, easily understood language" the

following:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Here, the collective notice of settlement and corresponding opt-in/claim form appear to

be sufficient, for the most part. The notice adequately describes the lawsuit in simple, yet

informative terms.  [*Id.* at pp. 2-3]  It succinctly describes the terms of the proposed agreement,

including: the gross settlement amount, dollar figure estimates for all costs and fees that will

be deducted from the common fund prior to payouts, the opt-in and claim process, the *per*

*capita* and *pro rata* methods of allocating settlement funds, and the release of claims.  [*Id.* at

pp. 2-6]  It provides contact information for the plaintiffs' counsel.  [*Id.* at p. 7] The notice also

adequately describes most of the rights of putative collective members by informing them of

opt-in rights and procedures and what will happen if they do not opt-in.  [*Id.* at p. 5]

Further, the duplicate and dual-notice email and mailing procedures are appropriate.

*See Williams*, 2017 WL 987452, at *7.  The proposed sixty-day deadline from the initial

mailing to opt-in is also appropriate.  *Id.* (citing *Ganci v. MBF Inspection Servs., Inc.*, Case

No. 2: 15-cv-2929, 2016 WL 5104891, at *3 (S.D. Ohio Sept. 20, 2016); *Green v. Platinum*

*Rest. Mid-America, LLC*, Civ. An. No. 3: 14-cv-439-GNS, 2015 WL 6454856, at *5 (W.D. Ky. Oct. 26, 2015)). The opt-in/claim form should be simple for opt-in plaintiffs to understand and complete.

There is one minor problem, however, with the notice as it relates to the FLSA. While the notice adequately describes the rights of potential FLSA claimants to object to the settlement, *the notice form does not provide that objections must be submitted within sixty days of the initial mailing under the proposed agreement.* [Record No. 69-1, p. 6] This deadline could be inferred based on the opt-in deadline, but it is not obvious. Therefore, the Court declines to approve this notice for the purposes of the FLSA.

There are two sets of notices and claim forms that will go to class members. One is the same notice and opt-in/claim form discussed above that is to be sent to the collective. [Record No. 69-1, pp. 2-10] This notice will be sent to Kentucky class members who are also collective members (in addition to collective members, like Edwards, who are not Kentucky class members). This overlapping approach appears to be an efficient way of facilitating notice, as it involves the use of one set of documents for all potential FLSA opt-in plaintiffs.

And it generally does a good job of distinguishing between Kentucky class issues and FLSA collective issues when necessary. For example, it provides different applicable dates relating to the periods of work for consultants who are members of the class and those who are members of the collective. [*Id.*] This is a simple way of explaining the class definition. *See* Fed. R. Civ. P. 23(c)(2)(B)(ii). Importantly, the overlapping notice also provides opt-out instructions and explains the legal effects of opting out for the purposes of the class action aspect of this case. [Record No. 69-1, p. 5; *see also* Fed. R. Civ. P. 23(c)(2)(B)(v)-(vii)]. The

nature of the action and claims/issues/defenses discussion requirements are also satisfied.  Fed.

R. Civ. P. 23(c)(2)(B)(i), (iii).

The opt-in/class action claim form appears to be sufficient in relation to the class action.

The plaintiffs' counsel will be sending the documents using a dual notice system of U.S. First

Class mail and email.  The plaintiffs' counsel will also send duplicate notices to remind class

members of their options thirty days after the initial mailing.  The method of effectuating notice

appears to be the best practicable under the circumstances.

However, *the same objections problem that exist for this notice and corresponding form*

*under the FLSA also exist for the purposes of Rule 23.  Additionally, it does not appear that*

*the notice adequately apprises potential class members of their rights to enter an appearance*

*by attorney.  See* Fed. R. Civ. P. 23(c)(2)(B)(iv).  Therefore, approval of this FLSA/Kentucky

class notice will be denied for the purposes of the class action.

The second class action notice and corresponding claim form will be sent to unnamed

plaintiffs who are only putative members of the Kentucky class, *i.e.*, consultants who solely

performed work for CKF in Kentucky between April 25, 2014, and April 24, 2016 (before the

April 25, 2016, date that represents the earliest work date for members of the FLSA collective).

[Record No. 69-1, pp. 12-17] The notice and claim form are generally sufficient and deficient

for the purposes of the class action as the other notice/form.

However, *this Kentucky class only notice has an additional significant deficiency*.  Its

claim release section states as follows:

> If the Court grants final approval of the Settlement, the lawsuit will be dismissed
> with prejudice against [CKF], and all Settlement Participants will release [CKF]
> and all Releasees from any and all claims that were or could have been asserted
> in the Complaint based on the facts alleged for unpaid wages, overtime
> compensation, liquidated or other damages, unpaid costs, restitution or other

- 38 -

compensation or relief arising under FLSA or under Kentucky wage and hour laws, or state common law claims (including unjust enrichment or quantum meruit) for work performed prior to December 24, 2019. However, with the exception of the Named Plaintiffs, only individuals who are issued a *pro rata* Settlement Award check will release their FLSA claims against Defendants and Releasees. If you do not submit a Kentucky Only Class Claim Form and do not request exclusion from the settlement, you will release claims under Kentucky wage and hour laws but will not release your FLSA claims against Defendants and Releasees.

[*Id.* at p. 14] It is unclear why this notice accounts for a release of FLSA claims when the proposed agreement noticeably omits a release of FLSA claims by consultants who are class, but not collective, members. [Record No. 68-2, ¶ 19] The proposed agreement's handling of this matter is sensible and fair. By participating in the settlement as Kentucky class plaintiffs, consultants would forgo individual claims for violation of the KWHA. [*Id.*] Logically, Kentucky class only members should be able to submit a claim form, receive a *per capita* and *pro rata* settlement allocation, and forfeit the relevant KWHA claims. But doing so should not also release the FLSA claims if those consultants are not also members of the FLSA collective. *In addition to the objections period and right to an attorney problems identified for the first notice, the Court declines to approve the Kentucky class only notice because it indicates that the relevant consultants may release federal claims.*

The issues that are problematic in the notices are linked to the proposed agreement. Therefore, the Court declines to preliminary approve the proposed agreement until they are resolved.

## III. Conclusion

Conditional certification of the collective and preliminary certification of the Rule 23 Kentucky class is appropriate at this time. And while the Court agrees that most provisions of

the proposed agreement are sufficient, it declines to preliminarily approve the settlement until the identified deficiencies are remedied.  Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1.      Plaintiff Julia Ware and Ralph Edwards' unopposed motion [Record No. 68] is **GRANTED**, in part, and **DENIED**, in part.

2.      The FLSA collective is **CONDITIONALLY CERTIFIED**.

3.      The Rule 23 class is **PRELIMINARILY CERTIFIED**.

4.      Ware is **APPOINTED** as the Kentucky class representative.  Edwards will serve as a named plaintiff for the purposes of the FLSA collective but will not serve as a class representative.

5.      Harold Lichten and Olena Savytska of Lichten & Liss-Riordan, P.C., Sarah Schalman-Bergen and Alexandra Piazza of Berger Montague PC, and David Blanchard and Frances Hollander of Blanchard & Walker, PLLC, are **APPOINTED** as class counsel.

6.      The attorney's fees, costs, and service awards provided for in the proposed agreement are **PRELIMINARILY APPROVED**.

7.      The *cy pres* beneficiary is **PRELIMINARILY APPROVED**.

8.      The Court **DECLINES** to approve the notices to putative collective and class members.

9.      The Court **DECLINES** to preliminarily approve the proposed agreement in its entirety at this time.

10.      Should the plaintiffs renew their motion to correct any deficiencies and proceed with the notice process, they are **DIRECTED** to propose an appropriate date for a hearing on

final certification of the FLSA collective, final certification of the Kentucky class, and final approval of the proposed agreement.

      Dated:  May 12, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky